UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/30/2026

CINDY MOONSAMMY, as Parent and Natural
Guardians of A.M., and CINDY
MOONSAMMY Individually;

JOSE GARZON, as Parent and Natural Guardian
of M.G., and JOSE GARZON, Individually;

SABINE MOISE DESIR, as Parent and Natural
Guardian of M.C.-I., and SABINE MOISE
DESIR, Individually;

LEONARDA BAUTISTA, as Parent and Natural
Guardian of A.A.-B., and LEONARDA
BAUTISTA, Individually;

VERONICA VALENCIA, as Parent and Natural
Guardian of A.M., and VERONICA
VALENCIA, Individually,

                                    Plaintiffs,

                -against-                                          25 Civ. 5923 (AT)

MELISSA AVILES-RAMOS, in her official                             **ORDER**
capacity as Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

                                    Defendants.

ANALISA TORRES, District Judge:

Plaintiffs are the parents of five students with disabilities who are enrolled at the

International Academy for the Brain ("iBRAIN").  On July 18, 2025, they brought this action under

the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against

Defendants, the New York City Department of Education and its Chancellor (collectively, the

"DOE" or the "Department"), alleging that the DOE failed to identify, implement, and fund the

students' pendency placements for the 2025–2026 school year ("SY").  *See generally* Compl., ECF

No. 1.  Plaintiffs previously moved for a preliminary injunction requesting that the Court establish the students' pendency placements at iBRAIN and order the DOE to fund such placements for the 2025–2026 SY.  *See* Order I, ECF No. 27.  On August 26, 2025, the Court granted the motion in part and denied it in part.  *Id.*  The Court declared that iBRAIN is the students' pendency placement for the 25–26 SY but did not direct the DOE to immediately fund those placements.  *Id.*

Pending before the Court is Plaintiffs' motion for reconsideration of the Court's preliminary injunction, as well as Defendants' motion to modify the preliminary injunction and dismiss certain Plaintiffs from the action.  *See* Pl. Mot., ECF No. 31; Pl. Mem., ECF No. 32; Def. Opp. Mem, ECF No. 39; Pl. Reply, ECF No. 51; Def. Ltr; ECF No. 58; Def. Mem., ECF No. 68; Pl. Opp. Mem., ECF No. 69.  For the reasons stated below, the Court DENIES Plaintiffs' motion, and GRANTS Defendants' motion.

## BACKGROUND[1]

I.    Legal Standard

It is "well-settled" that litigants may not use a motion for reconsideration as a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up).  The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the Court overlooked."  *Id.* (citation omitted); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (explaining that reconsideration should be granted "only when the [movant] identifies 'an intervening change of controlling law, the

---

[1] The Court presumes familiarity with the facts underlying this action and summarizes only the facts relevant to the motions before it.

availability of new evidence, or the need to correct a clear error or prevent manifest injustice'" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))).

Yet a district court also retains "the inherent authority to reconsider and modify its interlocutory orders." *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 177–78 (S.D.N.Y. 1995); *see United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("[T]he power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules." (citation omitted)). Even for final orders, Federal Rule of Civil Procedure Rule 60(b) provides a mechanism for the Court to correct its mistakes. *See* Fed R. Civ. P. 60(b) (permitting the court, on "motion and just terms," to relieve a party from a final order within a one-year period from entry because of "mistake, inadvertence, surprise, or excusable neglect"); *see also id.* 60(d) (permitting a court to modify a judgment "for any other reason that justifies relief").

## II.    Statutory Background

"The IDEA offers federal funds to states that demonstrate, *inter alia*, that they have developed plans to assure 'all children with disabilities residing in the state' a 'free appropriate public education' ('FAPE')." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 159–60 (2d Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)). School districts must create an individualized education program ("IEP") for qualifying children to ensure they receive a FAPE. 20 U.S.C. § 1414(d). "The IDEA requires that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'" *R.E. v. New York City Dept. of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citation omitted). If a parent believes that the IEP is inadequate and that DOE thus failed to provide their child with a FAPE, "the parent may file a 'due process

3

complaint' [('DPC')] (a type of administrative challenge unrelated to the concept of constitutional due process) with the appropriate state agency." *Id* (citing 20 U.S.C. § 1415(b)(6)). The due process hearing is conducted by an Impartial Hearing Officer ("IHO"). *See* 20 U.S.C. § 1415(f)(1)(A). After an IHO has issued a decision, either party may appeal that decision to the State Review Officer ("SRO"). N.Y. Educ. L. § 4404(2). Either party may then seek review of the SRO's decision in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

The IDEA contains a "stay-put" or "pendency" provision that entitles children to "remain in [their] then-current educational placement" at public expense "during the pendency of any proceedings." 20 U.S.C. § 1415(j). "Parents can also unilaterally change their child's placement during the pendency of review proceedings—for instance, by enrolling them in private school— but they do so at their own financial risk." *Mendez*, 65 F.4th at 59.

To determine a student's "then-current educational placement" for purposes of the stay-put provision, courts look to (1) "typically the placement described in the child's most recently implemented IEP"; (2) "the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked"; and (3) "the placement at the time of the previously implemented IEP." *Mackey*, 386 F.3d 158 at 163 (citations omitted). The term "'operative placement' has its origin in cases where the school district attempts to move the child to a new school without the parents' consent, or where there is no previously implemented IEP so that the current placement provided by the school is considered to be pendency placement for the purposes of the stay-put provision." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 536 (2d Cir. 2020). It does not apply to circumstances where, for example, a parent "unilaterally transfer[s] his or her child and subsequently initiate[s] an IEP dispute to argue that the new school's services must be funded on a pendency basis." *Id.*; *see also Mendez*, 65 F.4th at 59.

III.    Factual Background

Plaintiffs are parents and guardians of five students with disabilities: A.M. (Moonsammy), M.G., M.C.-I., A.A.-B., and A.M. (Valencia).[2] *See generally* Compl.  Between June and July 2025, Plaintiffs filed DPCs alleging that the DOE did not provide their children a FAPE for the 2025–2026 SY.  *Id.* ¶ 18; *see* ECF Nos. 1-1 at 2, 1-4 at 2, 1-5 at 2, 1-6 at 2, 1-7 at 2.  During the pendency of the proceedings, Plaintiffs enrolled their children at iBRAIN.  *See* ECF Nos. 1-2 at 23, 1-4 at 35, 1-5 at 43, 1-6 at 32, 1-8 at 7.

Since the Court's August 26 Order, the five students have received pendency orders from an IHO.  First, on August 29, 2025, A.M. (Valencia) received a pendency order from an IHO, establishing pendency at iBRAIN, along with tuition and transportation expenses.  Def. Ltr. at 2.  Second, on August 20, 2025, M.C.-I. received a pendency order from an IHO establishing pendency at iBRAIN and its associated service providers.  *Id.*  Next, on October 10, 2025, A.M. (Moonsammy) received a pendency order establishing pendency at iBRAIN and its associated service providers.  *Id.*  Fourth, Defendants agree that A.A.-B.'s pendency lies in SRO Decision 23-131, which places A.A.-B. at iBRAIN, although the IHO reached a different decision.  *See* Def. Mem. at 7.  Finally, on October 15, 2025, an IHO found that M.G. did not have pendency at iBRAIN because SRO Decision 24-056 found that DOE had offered M.G. a FAPE for the 2024–2025 SY (when M.G. was not enrolled at iBRAIN).  *Id.*; *see* M.G. IHO Decision at 3, ECF No. 58-2, at 3.  Administrative proceedings are ongoing, as several of these decisions, including decisions related to the scope of pendency and decisions on the merits of Plaintiffs' DPCs, proceed on appeal.  *See generally* Def. Ltr.

---

[2] The Court recognizes that while the motions for reconsideration and modification of the Court's order were pending, A.M. (Valencia) tragically passed away.  *See* ECF No. 72.

**DISCUSSION**

I.      Plaintiffs' Motion for Reconsideration

Plaintiffs' motion for reconsideration argues that the Court "overlooked the crucial distinction between declaring DOE's obligation to 'fund' pendency and ordering DOE to 'pay'" in denying Plaintiffs' motion for a preliminary injunction directing the DOE to fund tuition and other educational expenses for the 2025–2026 SY.  Pl. Mem. at 2; *see id*. at 10.  Plaintiffs argue that under the IDEA's pendency provision, the "funding obligation is automatic and arises upon the filing of a Student's DPC," *id.* at 5, and that "DOE's obligation to fund each Student's pendency placement/program" is "established automatically," *id.* at 10.  Plaintiffs insist, therefore, that the pendency provision automatically entitles them to a preliminary injunction ordering funding of their pendency placements.

First, the Court fails to see how ordering DOE to *fund* Plaintiffs' pendency placement is distinct from ordering DOE to *pay* Plaintiffs.  However they frame it, Plaintiffs plainly sought a preliminary injunction directing the DOE to make certain educational payments and establishing the scope of those payments.  *See* PI Mot. at 9, ECF No. 8 (arguing that their request for relief should be granted because "payment and placement go hand-in-hand"); *id.* at 1–2 (requesting an order to "compel payment").  The Court did not hold that DOE has no obligation to ever fund pendency placements—it only denied Plaintiffs' request for a preliminary injunction ordering the DOE to fulfill certain funding requests at this stage of litigation.  *See* Order I at 5–6 (denying the request for a preliminary injunction ordering funding because Plaintiffs failed to demonstrate irreparable harm); *see also id.* at 3 (acknowledging that the stay-put provision entitles a student to remain at their then-current educational placement "at public expense").

Second, *Mendez* rejected Plaintiffs' argument that because funding and placement go hand-in-hand, the traditional preliminary injunction factors should not apply to a request for funding of a pendency order. *Mendez*, 65 F.4th. at 62–63. *Mendez* confirmed that the traditional preliminary injunction factors apply to a motion for a preliminary injunction requesting that the Court direct the DOE to fund a pendency order. *Id.*; *see also id.* at 60 (affirming the denial of a preliminary injunction seeking "an order requiring the DOE to 'immediately implement each Student's Pendency Order, by funding the Students' tuition and related services, including transportation and nursing, where applicable'" because Plaintiffs "were unable to show irreparable harm arising from the DOE's alleged failure to pay" (citation omitted)).  Therefore, even if Plaintiffs are correct that the DOE has unlawfully delayed or refused funding, they have not identified a legal error in the Court's decision to apply the traditional preliminary injunction factors to their request or in the Court's conclusion that Plaintiffs failed to introduce evidence of irreparable harm. *See id.*

"Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (quotation omitted).  For the reasons explained in the August 26 Order, Plaintiffs have made "no showing that schooling or related services were or are at risk for the 2025–2026 SY, or that the students' continued enrollment at iBRAIN has been jeopardized by the DOE's alleged nonpayment." Order I at 5; *see Mendez*, 65 F.4th at 63 (holding that Plaintiffs may obtain preliminary injunctive relief for educational payments "if they establish that a delay or failure to pay has jeopardized their child's educational placement").  In their motion for reconsideration, Plaintiffs again make no argument that the Court overlooked any evidence demonstrating irreparable harm. *See generally* Mem. (never mentioning irreparable harm).  Accordingly, Plaintiffs have not identified a basis for the Court to reconsider its prior order that

faithfully applied the preliminary injunction factors to Plaintiffs' request for funding. Plaintiffs' motion for reconsideration is denied.

II.    Defendants' Motion to Dismiss Certain Plaintiffs

The Court agrees that Plaintiffs' claims are improperly joined, and accordingly, dismisses the claims of all Plaintiffs other than Cindy Moonsammy, as parent and natural guardian of A.M., and Cindy Moonsammy, individually, without prejudice to refiling their claims in separate actions.

Joinder is proper when there is a "logical relationship" between Plaintiffs' claims. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004). Although the facts need not be identical, "the essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (cleaned up). The Court agrees with Judge Cronan's well-reasoned decision in *Frias* that the "essential facts" of claims like Plaintiffs' are not "so logically connected" that the issues should be resolved together:

> Each of the [] students has a different individualized education program, the alleged deficiency of which prompted each student to file a different DPC. The particular DPCs are being reviewed by separately assigned impartial hearing officers in different administrative proceedings. And logically, each Plaintiff's entitlement to relief depends on facts unique to that Plaintiff's administrative proceeding. Because no two Plaintiff[s'] claims depend on the same facts, resolving one Plaintiff's claim would do nothing to resolve another Plaintiff's claim.

*Frias v. Aviles-Ramos*, No. 25 Civ. 5936, 2025 WL 2494336, at *2 (S.D.N.Y. Aug. 29, 2025).

Plaintiffs argue that this matter is "not about each Plaintiff's unique educational program but the Defendants' systemic failure to timely implement each Plaintiff['s] pendency rights." Pl. Opp. Mem. at 14. The Court is unpersuaded. As Plaintiffs acknowledge, Plaintiffs filed a motion for preliminary injunction "seeking an order to establish the Students' pendency placements for 2025–2026 SY, including the financial obligations of Defendants to implement the pendency

placement at iBRAIN for the 2025–2026 SY." *Id.* at 1.  But "Defendants' obligations toward each student-Plaintiff depend on separate orders entered in separate administrative proceedings, based on different records, for different children, and covering different time periods.  The general allegation of widespread delay by the DOE does not alter the conclusion that each Plaintiff's entitlement to relief is rooted in a different set of 'essential facts.'" *Frias*, 2025 WL 2494336, at *2; *see also Bautista v. Banks*, 2023 WL 6811775, at *3 (S.D.N.Y. Oct. 16, 2023) (finding joinder improper in an IDEA case where "Plaintiffs are two distinct individuals, with unique needs and different underlying FAPEs, seeking enforcement of two different final administrative orders, issued for different periods and by different IHOs, in different administrative proceedings").

In exercising its "broad discretion" to drop a party, the Court is "guided by principles of fundamental fairness and judicial efficiency." *Id.* (citation omitted).  Because "each Plaintiff's request turns on a different set of facts," it will be difficult to "[m]anag[e] those individualized records within one docket." *Frias*, 2025 WL 2494336, at *3; *Bautista*, 2023 WL 6811775, at *5 ("It is extremely inefficient to litigate what are effectively two separate actions in a single lawsuit.").  Furthermore, Plaintiffs would be minimally prejudiced by having to refile their claims as individual actions.  Much of the relief previously sought by Plaintiffs—specifically, funding of pendency at the preliminary injunction stage—has been denied, and this Court has not yet considered the merits of Plaintiffs' claims.  "Because the misjoined claims can be refiled in a new action at modest cost, the dismissal of those claims is not unfair.  Therefore, the Court concludes that the misjoined claims must be dismissed." *Bautista*, 2023 WL 6811775, at *5.

III.     Defendants' Motion to Modify/Clarify the Preliminary Injunction

Defendants also move to modify the preliminary injunction based on a conflict between the Court's order and orders in two of the students' underlying administrative actions regarding

pendency placement for the 2025–2026 SY (A.A.-B. and M.G.).  *See* Def. Ltr. at 2–3.  Defendants seek modification because Defendants cannot comply with conflicting orders.  *See id.*  Defendants also seek clarification on the scope of the pendency placement in light of more specific orders on pendency issued in the underlying administrative proceedings in M.C.-I. and A.M. (Valencia).  *Id.* Although Defendants' motion to modify or clarify the preliminary injunction applies only to those Plaintiffs who have been ordered dismissed from this action, for the avoidance of doubt, and to ensure that the Court's order does not have any preclusive effect, the Court decides that vacating the portion of its order declaring that all Plaintiffs have pendency placements at iBRAIN is justified.  *See* Order I at 4, 6.

The Court recognizes that its legal conclusion regarding pendency placement was based on a misapprehension of fact from Defendants' opposition brief.  Unlike the IHO, the Court did not analyze, nor was made aware of, the facts surrounding Plaintiffs' entitlement to pendency at iBRAIN under the stay-put provision; rather, because Defendants represented that the students' "placements are not at risk" and did not specifically dispute that the students' pendency lies at iBRAIN, the Court assumed that pendency placement at iBRAIN was undisputed for all students. *See* Order I at 4 (citing Defendants' brief at 8, ECF No. 12).  However, as Defendants have now clarified, administrative proceedings for M.G. have concluded, and an IHO has found that pendency is not in iBRAIN.  *See generally* Def. Ltr.  Unlike the IHO, the Court did not analyze each student's unique educational history to determine where, as a matter of law, pendency lies.

Left unmodified, the Court's order on Plaintiffs' motion for a preliminary injunction would directly conflict with at least one new order in an underlying administrative action regarding pendency placement, such that Defendants cannot comply with both the Court's and the administrative order.  *See* Def. Ltr. at 3.  This change in fact makes reconsideration even more

appropriate, particularly because M.G. is very possibly not entitled to pendency at iBRAIN as a matter of law and so enforcement of the Court's order would be inequitable.

Plaintiffs' argument that the Court cannot modify its order is unavailing. *See* Pl. Opp. Mem. at 3. Plaintiffs brought their motion as seeking preliminary injunction, and the Court granted relief in part on that motion for a preliminary injunction. *See* PI Mot. I., ECF No. 8, at 7; Order at 6. That order is therefore subject to modification as litigation proceeds. *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). Even if the Court did not consider its order to be a preliminary injunction, it would still retain "the inherent authority to reconsider and modify its interlocutory orders," *Gordon & Breach Sci. Publishers S.A.*, 905 F. Supp. at 177–78, particularly in circumstances like these where the Court finds that new facts make enforcement of its order inequitable and where the Court acknowledges a mistake of law or fact in its decision. *See also Sierra Club*, 732 F.2d at 256 ("A trial court's power to modify, like the power over all its orders, is inherent."); *id.* (stating that a court may modify a preliminary injunction where the status quo is "maintained by the modification" and a final or permanent order where there has been "such a change in the circumstances as to make modification of the decree equitable").

In exercising its discretion to vacate its order, the Court considers that expenses for a single year at iBRAIN are potentially hundreds of thousands of dollars per student, *see, e.g.*, ECF No. 40-2. As a result, DOE's compliance with the Court's order would require expending a considerable amount of public funds. The Court does not blame Plaintiffs for the Court's mistake and certainly does not approve of Defendants' belated request for modification. The Court notes that, had Defendants indicated that pending administrative hearings were actively considering the Plaintiffs' pendency placements before entry of its August 25 Order, this order would not be necessary. Nonetheless, vacating the Court's declaration regarding pendency placements for the

11

2025–2026 SY is justified.  For the avoidance of doubt, this order should not be construed as establishing pendency at iBRAIN from August 26, 2025 until the date of this order; rather, the Court vacates its August 26 order such that Plaintiffs never had a declaration of pendency at iBRAIN from this Court.  Finally, because the Court vacates the portion of the order declaring pendency at iBRAIN, and dismisses all Plaintiffs except A.M. (Moonsammy), clarification as to the scope of pendency is not required.  The dismissed Plaintiffs retain the opportunity to argue that they are entitled to a pendency placement at iBRAIN, including all associated service providers, if or when they refile their claims separately.

### CONCLUSION

For the reasons stated above, Plaintiffs' motion for reconsideration is DENIED, and Defendants' motion to dismiss certain Plaintiffs and to modify or clarify the preliminary injunction is GRANTED.  The claims of all Plaintiffs except Cindy Moonsammy, as the parent and natural guardian of A.M., and Cindy Moonsammy individually, are DISMISSED without prejudice to the refiling of their claims in separate actions.  By **February 9, 2026**, Defendants shall answer or otherwise respond to Moonsammy's complaint.  *See* ECF No. 70.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 31 and terminate from the caption all Plaintiffs from the action except Cindy Moonsammy, as parent and natural guardian of A.M., and Cindy Moonsammy, individually, and amend the caption accordingly.

SO ORDERED.

Dated: January 30, 2026
      New York, New York

_____
ANALISA TORRES
United States District Judge