USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/31/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CINDY MOONSAMMY, as Parent and Natural Guardians of A.M., and CINDY MOONSAMMY Individually;

Plaintiff,

-against-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.

25 Civ. 5923 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Cindy Moonsammy, in her individual capacity and as parent and natural guardian of A.M., brings this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against Defendants, the New York City Department of Education and its Chancellor (collectively, the "DOE" or the "Department"), alleging that the DOE failed to identify, implement, and fund A.M.'s pendency placement for the 2025–2026 school year ("SY"). *See generally* Compl., ECF No. 1. Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Mot., ECF No. 75; Mem., ECF No. 76; Opp., ECF No. 86; Reply, ECF No. 88. For the reasons stated below, Defendants' motion is granted.

**BACKGROUND**

I. Statutory Background

"The IDEA offers federal funds to states that demonstrate, *inter alia*, that they have developed plans to assure 'all children with disabilities residing in the state' a 'free appropriate public education' ('FAPE')." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch.*

*Dist.*, 386 F.3d 158, 159–60 (2d Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)). School districts must create an individualized education program ("IEP") for qualifying children to ensure they receive a FAPE. *See* 20 U.S.C. § 1414(d). "The IDEA requires that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'" *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citation omitted).

If a parent believes that the IEP is inadequate and that DOE thus failed to provide their child with a FAPE, "the parent may file a 'due process complaint' [('DPC')] (a type of administrative challenge unrelated to the concept of constitutional due process) with the appropriate state agency." *Id.* (citing 20 U.S.C. § 1415(b)(6)). The due process hearing is conducted by an impartial hearing officer ("IHO"). *See* 20 U.S.C. § 1415(f)(1)(A). After an IHO issues a decision on the DPC, either party may appeal that decision to the state review officer ("SRO"). *See* N.Y. Educ. L. § 4404(2). Either party may then seek review of the SRO's decision in state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A).

The IDEA contains a "stay-put" or "pendency" provision that entitles children to "remain in [their] then-current educational placement" at public expense "during the pendency of any proceedings." 20 U.S.C. § 1415(j); *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023). "Parents can also unilaterally change their child's placement during the pendency of review proceedings—for instance, by enrolling them in private school—but they do so at their own financial risk." *Mendez*, 65 F.4th at 59 (cleaned up). To determine a student's "then-current educational placement" for purposes of the stay-put provision, courts look to (1) "typically the placement described in the child's most recently implemented IEP"; (2) "the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked"; and (3) "the placement at the time of the previously implemented IEP." *Mackey*, 386 F.3d 158 at 163

(citations omitted). The term "'operative placement' has its origin in cases where the school district attempts to move the child to a new school without the parents' consent, or where there is no previously implemented IEP so that the current placement provided by the school district is considered to be pendency placement for the purposes of the stay-put provision." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 536 (2d Cir. 2020). It does not apply to circumstances where a parent "unilaterally transfer[s] his or her child and subsequently initiate[s] an IEP dispute to argue that the new school's services must be funded on a pendency basis." *Id.*; *see Mendez*, 65 F.4th at 59.

Relatedly, the stay-put provision "does not prohibit the school district from determining how, and where, a student's pendency placement should be provided." *Ventura de Paulino*, 959 F.3d at 536. "'[I]t is up to the school district,' not the parent, 'to decide how to provide that educational program [during pendency], so long as the decision is made in good faith." *Id.* at 534 (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014)); *see Concerned Parents v. N.Y.C. Bd. of Educ.*, 629 F.2d 751, 756 (2d Cir. 1980).

## II. Factual Background

Plaintiff, Cindy Moonsammy, is the parent and natural guardian of A.M., an eight-year-old student with a disability, as defined by 20 U.S.C. § 1401(3). Compl. ¶¶ 41–43. On June 27, 2025, Plaintiff "brought a DPC against DOE alleging, among other things, that DOE did not provide A.M. a FAPE for the 2025–2026 SY, that [the International Academy of the Brain ('iBRAIN')] was an appropriate unilateral placement for A.M., and that equities favored a request for direct payment of tuition and related services, including special transportation services and nursing services . . . ." *Id.* ¶ 75; *see also* A.M. DPC, ECF Nos. 1-1 through 1-3. In the same DPC, Plaintiff requested that DOE "fully fund A.M.'s placement at iBRAIN, in

accordance with the respective contracts for tuition, special transportation, and nursing, as pendency, to maintain the status-quo education placement, through the 'stay-put' provision under 20 U.S.C. § 1415(j) . . . ." Compl. ¶ 76. On July 18, 2025, Plaintiff filed this action alleging that Defendants had not recognized A.M.'s pendency program or made any pendency payments with respect to the 2025–26 SY. *See generally id.*

Plaintiff alleges that Defendants failed to timely implement A.M.'s pendency placement for the 2025–26 SY and failed to make all applicable funding payments for tuition, special transportation, and nursing services in accordance with Plaintiff's respective service agreements. *See id.* ¶ 19. Plaintiff claims that Defendants have, therefore, violated A.M.'s right to a FAPE and stay-put placement under the IDEA, certain New York state laws and regulations implementing the IDEA,[1] and the New York State and United States Constitutions. *See, e.g., id.* ¶¶ 120–53. Plaintiff seeks (1) a declaration that iBRAIN and related special transportation and nursing services constitute A.M.'s pendency program for the 2025–26 SY; (2) an order directing Defendants to fully fund, without delay, A.M.'s pendency at iBRAIN, along with tuition, special transportation, and nursing services in accordance with Plaintiff's service agreements with each provider and accrued late fees; (3) attorneys' fees; and (4) all other relief deemed just and proper. *Id*. at 23–24.

III. <u>Subsequent Developments</u>

Plaintiff filed the complaint in this action on July 18, 2025. *See* Compl. On October 10, 2025, after two days of hearings in September, an IHO issued a pendency order for A.M., establishing A.M.'s pendency placement at iBRAIN. *See* Findings of Fact and Decision

[1] The IDEA is implemented at the state level through New York State Education Law and in Part 200 of the Regulations of the Commissioner of Education. *See generally*, N.Y. Educ. Law; N.Y. Comp. Codes R. & Regs. tit. 8, § 200, *et seq.*

("FOFD"), ECF No. 77-1; Mem. at 3. The FOFD directed DOE to "directly fund," within 30 days of its order, "[A.M.'s] tuition at [iBRAIN] for the 12-month 2025–2026 school year," "private round-trip special transportation services for [A.M.] during school days, based on the transportation provider of [A.M.'s parent's] choice," and "individual nursing services for [A.M.] during school days." FOFD at 7.

Thirty days later, on November 11, 2025, payments for A.M.'s tuition, special transportation, and nursing services for the 2025–26 SY were outstanding. *See* ECF No. 54. On November 14, 2025, DOE timely requested review of the IHO's decision before an SRO, *see* Verified Request for Review, ECF No. 77-2; with respect to pendency, DOE disputed the IHO's determination that A.M. was entitled to a certain specialized transportation service during pendency, *see id.* at 1. On January 12, 2026, the DOE paid A.M.'s pendency tuition at iBRAIN, and as of July 24, 2026, DOE processed all funding for A.M.'s pendency nursing services. *See* Teszler Decl. ¶ 5, ECF No. 77; Def. Ltr. Nursing, ECF No. 95.

On February 6, 2026, Defendants moved to dismiss Plaintiff's complaint. *See* Mot. Plaintiff did not amend her July 2025 complaint. *See* Opp.; *see also* Rule III(B)(vi), Individual Rules in Civil Cases ("If a motion to dismiss is filed, the non-moving party must, within ten days of receipt of the motion, notify the Court and its adversary in writing whether (1) it intends to file an amended pleading and when it will do so, or (2) it will rely on the pleading being attacked.").

## DISCUSSION

### I. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To withstand a motion to dismiss for failure to

state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. On a motion to dismiss, the Court must draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

A motion to dismiss must be decided based on the facts alleged in the complaint as currently pleaded. *See, e.g.*, *Lerner v. Forster*, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) ("New claims not specifically asserted in the complaint may not be considered by courts in deciding a motion to dismiss."); *Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 316 (S.D.N.Y. 2014) ("Facts not contained in the [c]omplaint . . . cannot be considered in determining the sufficiency of the pleadings on a motion to dismiss.").

## II. Analysis

### A. Mootness

Several of Plaintiff's requests for relief are no longer needed, rendering them moot. *See Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."); *Lee v. Banks*, No. 23 Civ. 5800, 2024 WL 1657908, at *4 (S.D.N.Y. Apr. 17, 2024).

First, an IHO has declared that iBRAIN is A.M.'s pendency placement for the 2025–26 SY, *see* FOFD, and Defendants do not dispute that A.M.'s placement lies at iBRAIN, *see* Verified Request for Review at 1 (disputing only whether the scope of the pendency program includes certain specialized transportation). Second, Defendants have paid A.M.'s tuition at iBRAIN for the 2025–26 SY. *See* ECF No. 72 (Pl. Ltr.) at 3; *see generally* Opp. Third, as of July 24, 2026, Defendants have "authorized and processed" the full balance for A.M.'s nursing services for the 2025–2026 SY.[2] Therefore, the Court dismisses with prejudice Plaintiff's claims to the extent she seeks a declaration of A.M.'s pendency placement at iBRAIN, including tuition, nursing services, and associated funding for the 2025–2026 SY.

The Court next considers Plaintiff's remaining requests for relief—namely, a declaration of pendency entitlement to certain special transportation, funding for such services, and late fees associated with delayed or withheld payments. *See* Compl. at 23–24; *see generally* Opp.

B. Special Transportation Services

Defendants argue that Plaintiff's claim for special transportation services during pendency should be dismissed because the Office of Pupil Transportation remains an adequate alternative to Sisters Travel and Transportation Services ("Sisters"), Plaintiff's preferred transportation provider. *See* Mem. at 7. Defendants also state that the "transportation issue is currently being litigated before an SRO" and argue that "the administrative process should be allowed to proceed on that issue." *Id.* at 2.

[2] On February 6, 2026, Defendants stated that they had authorized and processed payment in the amount of $335,663.00, believing this to be full amount owed for A.M.'s nursing services. *See* Tezler Decl. ¶ 5; Def. Ltr. Nursing. Defendants, however, inadvertently omitted $20,000. *See* Def. Ltr. Nursing. After Plaintiff and the Court brought this to Defendants' attention, *see* ECF Nos. 93–94, Defendants "authorized and processed payment for the remaining balance of $20,000.00 for A.M.'s nursing services for the 2025–2026 extended school year." Def. Ltr. Nursing. Plaintiff does not claim that any nursing payments are outstanding.

As an initial matter, "an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions" to the exhaustion requirement. *Murphy v. Arlington Cent. Sch. Dist. Bd. Of Educ.*, 297 F.3d 195, 199–200 (2d Cir. 2002); *see Crespo v. Aviles-Ramos*, No. 25 Civ. 7563, 2025 WL 3022389, at *7 (S.D.N.Y. Oct. 29, 2025). Therefore, Plaintiff need not wait until the conclusion of Defendants' SRO appeal to assert her claims. The Court nonetheless finds that Plaintiff's complaint, as alleged, does not show entitlement to Sisters' services. Plaintiff's complaint alleges solely that she entered into an agreement with Sisters for transportation services, *see, e.g.*, Compl. ¶ 18 n.5, and that Defendants had not, as of the date of the complaint, funded a claimed pendency entitlement to Sisters "in accordance with [her]. . . special transportation . . . agreement[]," *id.* ¶ 19.

These allegations do not state a claim for relief. Under Second Circuit precedent, IDEA's "pendency provision does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers while his administrative and judicial proceedings are pending. Instead, it guarantees only the same general level and type of services that the disabled child was receiving." *T.M.*, 752 F.3d at 171. "It is up to the school district to decide how to provide that educational program, at least as long as the decision is made in good faith." *Id.*; *cf. Ventura de Paulino*, 959 F.3d at 536 ("Parents cannot determine unilaterally how the Students' educational program is to be provided at the City's expense.").

In light of this precedent, the complaint's sparse, conclusory allegations do not show that Defendants must fund transportation services "in accordance with [her] service agreement." Compl. ¶ 19. Although the complaint asserts that Plaintiff has "*a* previous final administrative order establishing iBRAIN and the related services as her pendency program," Compl. ¶ 23 (emphasis added), it does not allege sufficient facts for the Court to identify the most recently

implemented IEP for A.M. *See Mackey*, 386 F.3d at 163. Nor does the complaint describe what specialized services Sisters provides, explain how Sisters meets A.M.'s individual needs, or claim that Defendants refused to offer alternative transportation services that fulfill those needs. *See generally* Compl. Finally, Plaintiff cannot rely on the October 2025 pendency order to demonstrate the plausibility of her claim because the pendency order postdates her complaint. *See Radiancy*, 138 F. Supp. 3d at 316 (considering only those facts alleged in the complaint on a motion to dismiss). Therefore, Plaintiff has not adequately alleged an entitlement to specialized transportation services at Sisters. *See T.M.*, 752 F.3d at 171. Plaintiff's claim, however, is dismissed without prejudice because amendment does not appear to be futile; indeed, after Plaintiff filed the instant complaint, an IHO found that A.M. is entitled to Sisters' transportation services specifically. *See* FOFD at 7.

C. Late Fees

Plaintiff's complaint does not allege an entitlement to late fees. The complaint implies that Plaintiff is entitled to late fees because her contracts with the relevant service providers provide for them.[3] *See* Compl. ¶¶ 138, 142. However, because "the DOE is not a party each Plaintiff's contract with [the service provider,]" "the sole source of DOE's obligations in each Plaintiff's case is the applicable administrative order." *Davis v. Banks*, No. 22 Civ. 8184, 2023 WL 5917659, at *4 (S.D.N.Y. Sep. 11, 2023). Indeed, courts in this District have held that

[3] Plaintiff's complaint references "Late Fees," *see, e.g.*, Compl. ¶¶ 138, 142, but does not state the source of these fees, *see generally id.* Based on the parties' submissions, the Court understands that late fees arise from Plaintiff's service agreements—not from any statute or judicial or administrative order. For example, the iBRAIN enrollment contract, attached to Plaintiff's complaint, states that after 37 days of the "final adjudication" of a DPC, "a late tuition payment fee equal to ten percent (10%) of the Outstanding Amount . . . shall be immediately added to [the student's balance]," and "[t]hereafter, for every additional thirty (30)-day period, or fraction thereof, . . . interest shall accrue on the unpaid balance at the lesser of two percent (2 %) per calendar month, or the maximum rate permitted by applicable law." iBRAIN Enrollment Contract ¶ 8(c), ECF No. 1-2 at 23 to ECF No. 1-3 at 4. Plaintiff's transportation and nursing service agreements each contain similar provisions. *See* Sisters Service Agreement § 6, ECF No. 1-3 at 5–11; Nursing Service Agreement, ECF No. 1-3 at 13–19.

"requiring Defendants to pay late fees in accordance with a private contract runs contrary to the principle that, under IDEA, DOE is only required to pay pendency tuition retroactively, not prospectively." *Chaperon v. Banks*, No. 24 Civ. 5135, 2025 WL 2207908, at *8 (S.D.N.Y. Aug. 4, 2025); *see Davis v. Aviles-Ramos*, No. 25 Civ. 7555, 2026 WL 44725, at *5 (S.D.N.Y. Jan. 7, 2026). The Court agrees with the reasoning in *Chaperon*. *See* 2025 WL 2207908, at *8–9.

The Court concludes, therefore, that Plaintiff's private contracts, absent an administrative order ordering the same, do not obligate DOE to pay late fees. *See Davis*, 2023 WL 5917659, at *4; *see also Mendez v. Aviles-Ramos*, No. 25 Civ. 1096, 2025 WL 2793755, at *5 (S.D.N.Y. Oct. 1, 2025). In this case, Plaintiff's complaint predates the October 2025 pendency order, and, as a result, does not plead facts establishing an entitlement to late fees. *See Radiancy*, 138 F. Supp. 3d at 316 (considering only those facts stated in the complaint); *see also* Compl. ¶ 142 (stating only that "delays in funding pendency *may* incur late fees" (emphasis added)). To the extent Plaintiff seeks late fees based on the October 2025 pendency order, Plaintiff may amend her complaint.[4]

[4] The Court expresses no opinion as to whether the October 2025 pendency order obligates DOE to pay late fees for tuition, transportation, or nursing services.

**CONCLUSION**

For the reasons stated above, Defendants' motion dismiss is GRANTED. Plaintiff's motion for a conference is DENIED. Should Plaintiff wish to file an amended complaint consistent with this Order, she shall do so by **August 21, 2026,** and in accordance with Rule III(H) of the undersigned's Individual Practices in Civil Cases.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 75, 93.

SO ORDERED.

Dated: July 31, 2026
New York, New York

ANALISA TORRES
United States District Judge